1
2
3           **UNITED STATES DISTRICT COURT**
4           **DISTRICT OF NEVADA**
5   MARIA MAGDALENA FUENTES REYES,          Case No. 2:19-cv-02086-GMN-EJY
6                           Petitioner,
7          v.                                        **ORDER**
8   CHAD WOLF, Acting Secretary of the U.S.
    Department of Homeland Security, et al.,
9
10                          Respondents.

11          Petitioner Maria M. Fuentes Reyes, a counseled immigration detainee, has filed a Petition

12  for Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2241.[1]  Respondents have

13  answered the Petition (ECF No. 19), and Petitioner has replied (ECF No. 20).  For the reasons

14  discussed below, the Petition is granted in part and denied in part.

15                                  <u>**BACKGROUND**</u>

16          Petitioner is a 24-year old native and citizen of El Salvador who has been detained by the

17  United States Immigration and Customs Enforcement ("ICE") division of the Department of

18  Homeland Security ("DHS") since September 21, 2017.  (Pet. at 3–4, ¶¶ 4, 8.[2])  She is married to

19  a United States citizen, David Cisneros, and is the mother of a 4-year old daughter, H.C., who is

20  also a United States citizen.  (*Id.* at 5, ¶ 14.)

21  **I.    STATE CRIMINAL PROCEEDINGS**

22          In November 2016, one month after H.C. was born, Petitioner asked Cisneros to take her

23  shopping.  (*Id.* at 6, ¶ 16.)  He agreed to do so and arranged to sell a set of tools in the parking lot.

24
25  _____
    [1] The Court ordered Petitioner to amend the petition to include a memorandum of points and authorities
26  and properly refile her exhibits, thus, separating her motion for temporary restraining order.  (ECF No. 9.)
    She submitted a Combined Memorandum of Points and Authorities in Support of Petition for Writ of
27  Habeas Corpus (ECF No. 12) without amending the petition, although her arguments appear largely the
    same.  For clarity and ease of reference, this order simply refers to the original petition.
28  [2] On the date this action was commenced, Petitioner was detained at the Henderson Detention Center in
    Henderson, Nevada.  (Pet. at 3, ¶ 4.)

(*Id.*)  When the buyers arrived, a verbal and physical altercation occurred.  (*Id.*)  Petitioner testified before an immigration judge ("IJ") that several men began beating Cisneros and a woman pushed her, which caused Petitioner to slap the woman.[3]  (ECF No. 12-6 at 5–6.)  According to Petitioner, Cisneros then took Petitioner to her cousin's house where she and the baby remained with her cousin, and he left the house and was involved in a shooting later that day.  (*Id.*)  Petitioner testified that she was not present for the shooting (*id.* at 6–8), although Respondents dispute this account based on her prior testimony suggesting she was present.  (ECF No. 19 at 12 n.3.)

On May 18, 2017, a grand jury indicted Cisneros and Petitioner on multiple state charges stemming from the events of November 2016, and Petitioner was arrested the following week.  (Pet. at 6, ¶ 16.)  Both Cisneros and Petitioner were charged with battery, robbery, possession of stolen property, battery with the intent to commit a crime, discharge of firearm from or within structure or vehicle, discharging firearm at or into occupied structure, vehicle, aircraft, or watercraft, conspiracy to commit murder, and two counts of attempted murder with use of a deadly weapon.  (ECF Nos. 12-7, 12-9.)

Four months after Petitioner's arrest, state prosecutors filed an amended indictment pursuant to a guilty plea agreement and dropped all but one misdemeanor count of battery for slapping the woman.[4]  (ECF No. 19-4.)  On September 21, 2017, Petitioner entered a guilty plea to the misdemeanor battery charge.  (ECF No. 12-8.)  The state court sentenced her to 30 days in jail, credited her for time served, and closed her case.[5]  (*Id.*)

According to Petitioner, the arrest and misdemeanor battery conviction resulting from the events of November 2016 are the extent of her criminal history.  (Pet. at 2, ¶ 2; ECF No. 19-12 at 12.)  Respondents do not contend otherwise.

---

[3] Petitioner testified to these facts during a May 2018 merits hearing on her application for asylum.  (ECF No. 12-6.)

[4] Under Nevada law, a person may be convicted and punished for a misdemeanor where "the battery is not committed with a deadly weapon, and no substantial bodily harm to the victim results."  NRS 200.481(2)(a).

[5] Cisneros pleaded guilty to conspiracy to commit murder and attempted murder pursuant to a guilty plea agreement.  (ECF No. 12-9.)  The state court sentenced him to 84–216 months for the attempted murder charge and 24–60 months for the conspiracy charge.  (*Id.*)

## II.   IMMIGRATION PROCEEDINGS

Petitioner entered the United States in or about April 2014 seeking asylum.  (Pet. at 5, ¶ 14.)  An asylum officer conducted a credible fear interview and determined there was a significant possibility Petitioner could establish that she was persecuted or her fear of future persecution was well-founded.  (*Id.* at ¶ 15.)  The following month, DHS initiated removal proceedings by filing a Notice to Appear charging Petitioner as removable under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*  (*Id.*)  She was released from ICE custody on a $7,500 bond.  (*Id.*)

### A.   Relief Sought From Removal

Petitioner has requested relief from removal via two avenues: a "family-based" petition and an asylum application.  (*Id.* at 7, ¶¶ 17, 19.)  Cisneros filed a Petition for Alien Relative (Form I-130), *i.e.*, family-based petition, on Petitioner's behalf.[6]  (*Id.* at 5, ¶ 14.)  In January 2018, she filed an asylum application.  (*Id.* at 7, ¶ 17.)  Four months later, the IJ held a merits hearing on the asylum application, received testimony from Petitioner, and denied all forms of relief, including her request for continuance until her family-based petition was decided.  (*Id.* at ¶ 19.)  She appealed the denial of asylum relief to the BIA, which dismissed the appeal.  (*Id.* at ¶ 20.)  She then filed a petition for review before the United States Court of Appeals for the Ninth Circuit, *Fuentes Reyes v. Barr*, Case No. 18-73434, which is currently pending.  (*Id.* at 2, ¶ 1.)  A stay of removal has been in effect since December 2018.  (*Id.* at 7, ¶ 21.)  The U.S. Citizenship and Immigration Services approved the family-based petition on May 30, 2019.  (*Id.* at 5, ¶ 14.)

### B.   First Bond Request

After Petitioner's release from state custody in September 2017, she was immediately transferred to ICE custody.  (*Id.* at 6, ¶ 16.)  Two months later, she filed a bond request in the immigration court.  (*Id.* at ¶ 17.)  An IJ held a hearing in January 2018 and issued a bond memorandum finding that she is a danger to the community and denying the bond request ("2018 IJ Decision"):

---

[6] It is unclear when the family-based petition was submitted.  However, Cisneros and Petitioner were married in February 2017, months before she was taken into ICE custody.  (ECF No. 12-2.)

The record reflects that [Petitioner] was convicted of battery in May 2017. Despite this conviction, [she] was originally charged with attempted murder, discharging a firearm at a structure or vehicle, robbery, battery to commit robbery, conspiracy to commit murder, and conspiracy to commit robbery. At her bond hearing, [Petitioner] claimed that her husband was convicted of attempted murder and that she was present at the offense for which her husband was convicted. She also stated that her husband did not have or discharge a firearm. Despite the [Petitioner's] statements, the Court found [she] is a danger to the community because she was present when her husband attempted to murder somebody and that the battery conviction stems from the same offense that her husband was convicted of attempting to murder another person.

(ECF No. 12-10 at 2 (internal citation omitted).[7])

### C.     First BIA Appeal

Petitioner appealed the 2018 IJ Decision to the Board of Immigration of Appeals ("BIA"). (Pet. at 6–7, ¶ 17; 2018 Appellate Brief, ECF No. 19-10.)  On March 30, 2018, the appeal was dismissed ("2018 BIA Decision"):

On appeal, [Petitioner] argues that the Immigration Judge erred in finding [she] is a danger to the community based primarily on charges that were later dropped, and failing to consider her positive equities which include community and family ties. [Petitioner] also argues the Immigration Judge should not have denied bond based on facts and "bad acts" allegedly committed by her husband (Brief at 5-6). However, [Petitioner's] community and family ties did not prevent her from committing the very recent and very serious crime which ultimately resulted in her battery conviction. In addition, it is undisputed that the respondent was present at the time of the crimes for which her husband was convicted.

The Immigration Judge correctly considered the evidence of record. The evidence supports the Immigration Judge's determination that the DHS met its burden of establishing by clear and convincing evidence that continued detention of the respondent is justified due to the danger she poses to the community based on her prior arrest and conviction. *Matter of Siniauskas*, 27 I & N Dec. 207 (BIA 2018).

(ECF No. 12-11 at 3–4.)

### D.     Second Bond Request

In January 2019, Petitioner filed a motion for bond based on changed circumstances

---

[7] Counsel for Respondents reviewed the audio recording of the January 2018 bond hearing and represents that "ICE counsel asked Petitioner whether her husband was 'convicted of attempted murder and conspiracy to commit murder for *the incident that she was involved in*,' and she responded 'yes'." (ECF No. 19 at 12 n.3 (emphasis added).)  During her May 2018 merits hearing, Petitioner testified that she was not present when Cisneros committed his crimes because Cisneros took her and the baby home after the parking lot confrontation, he left the house, and the shooting occurred later that day at a different location.  (ECF No. 12-6 at 5–6.)  Petitioner contends that her testimony at the January 2018 bond hearing and the May 2018 merits hearing "was not actually conflicting." (ECF No. 20 at 3 n.1.)  Although she was present when Cisneros attempted to sell tools, she maintains she was not present for the shooting later on.  (*Id.*)

pursuant to 8 C.F.R. § 1003.19(e).  (Pet. at 7, ¶ 22.)   According to Petitioner, one changed circumstance was the discovery, through her testimony at the May 2018 merits hearing, that the IJ and BIA's factual basis for denying her first bond request was incorrect.[8]  (*Id.* at 13–14, ¶¶ 48–49.)  She filed the second bond request to clarify the details and sequence of events in November 2016.  (Mot. to Redetermine Bond, ECF No. 19-12).)  The IJ denied her bond request without receiving new testimony or proffered evidence regarding her changed circumstances.  (Pet. at 7, ¶ 22; *see also* Jan. 2019 Order, ECF No. 19-13.)  The IJ issued a second bond memorandum ("2019 IJ Decision") recounting the history of the bond and asylum proceedings, and holding as follows:

> [Petitioner] claimed that there are materially changed· circumstances because she has a petition pending before the circuit court and that Court may overrule the [BIA's] decision. In addition, she argued that a material changed in facts has come to light during [Petitioner's] individual hearing because she was not actually present at the scene when her husband committed any of the crimes for which he was convicted. She also argued a number of factors related to her family situation and ties to the community to warrant her release on bond.

> This Court concluded that there is lack of material changed circumstances and a lack of jurisdiction to hear [Petitioner's] bond since the [BIA] issued its final decision. Alternatively, this Court found the respondent remains a danger to the community and now is a risk of flight because this Court denied her requested relief and the [BIA] affirmed this Court's decision.

(ECF No. 12-12 at 3.)

**E.    Second BIA Appeal**

Petitioner appealed the 2019 IJ Decision to the BIA.  (Pet. at 7, ¶ 22; 2019 Appellate Brief, ECF No. 19-16.)  The BIA dismissed the appeal in April 2019 ("2019 BIA Decision"):

> As we noted in our prior decision, the Immigration Judge found that [Petitioner] was a danger to the community based on the fact that she was convicted of battery on September 21, 2017. In support of this finding, the Immigration Judge cited evidence reflecting that [Petitioner] was originally arrested and charged with attempted murder, discharging a firearm at a structure or vehicle, robbery, battery to commit robbery, conspiracy to commit murder, and conspiracy to commit robbery. *See Matter of Siniauskas*, 27 I & N Dec. at 209 ("It is ... proper to consider both arrests and convictions" in assessing an alien's dangerousness.).

> [Petitioner] argues that she was not present at the scene of the crimes with which she was initially charged, and she contends that her release would allow her to care

---

[8] Petitioner's counsel represents that, at the time of the January 2018 bond hearing, Petitioner's interest was to request bond as promptly as possible and counsel did not have access to the entire criminal proceedings or details of the complicated fact pattern. (ECF No. 20 at 3 n.1.)  It was later discovered that the events of November 2016 transpired at two different times and in two separate locations.  (*Id.*)

for her daughter's medical needs. However, the former argument does not qualify as a changed circumstance. It was previously undisputed that [Petitioner] was present at the scene of these offenses—she even testified during her initial bond hearing that she slapped a man who was present where and when these crimes took place. Furthermore, her daughter's medical conditions do not qualify as a material change in circumstances because they do not mitigate her dangerousness. As we noted in our previous decision, [Petitioner's] family ties did not prevent her from committing the recent and serious crimes which ultimately resulted in her battery conviction. *See id.* at 208 (holding that family and community ties generally do not mitigate an alien's dangerousness).

The Immigration Judge correctly considered the evidence of record and concluded that [Petitioner's] circumstances relating to her dangerousness had not materially changed since her last bond hearing. *See* 8 C.F.R. § 1003.19(e); *see also Matter of Siniauskas*, 27 I & N Dec. at 207 ("Dangerous aliens are properly detained without bond….").

(ECF No. 12-15 at 4 (internal citation omitted).)

## III.   FEDERAL HABEAS PROCEEDINGS

Petitioner commenced this habeas proceeding in December 2019 by filing the Petition (ECF No. 1) and an Emergency Motion for Temporary Restraining Order (ECF No. 2).  The Court ordered service of the Petition and denied the motion without prejudice. (ECF Nos. 5–6).

Broadly speaking, the Petition presents two grounds for relief under the Fifth Amendment's Due Process Clause.  Petitioner claims (1) her due process rights were violated because the IJ and/or BIA applied the wrong legal standards in the bond proceedings, which deprived her of a full and fair hearing, and (2) her prolonged civil detention without a constitutionally adequate bond proceedings violates her core liberty interest in freedom from bodily restraint.  Petitioner further contends that she has been prejudiced by the due process violations.  In her request for relief, she asks this Court to, among other things, grant a writ of habeas corpus directing Respondents to immediately release her from custody unless the government provides her a new bond hearing in which the government bears the burden of proof to show, by clear and convincing evidence, that she is a present danger to the community or a flight risk.

## **DISCUSSION**

## I.   GOVERNING LAW

### A.   **Federal Habeas Jurisdiction**

Federal district courts may grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A non-citizen petitioner held in custody pursuant to removal proceedings may "bring collateral legal challenges to the Attorney General's detention authority" through a § 2241 petition. *Casas-Castrillon v. DHS*, 535 F.3d 942, 946 (9th Cir. 2008). Federal district courts have habeas jurisdiction under § 2241 to review "bond hearing determinations for constitutional claims and legal error." *Singh v. Holder*, 638 F.3d 1196, 1200 (9th Cir. 2011) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). Although the Attorney General's "discretionary judgment" is expressly precluded from judicial review, 8 U.S.C. § 1252(g), "claims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Id.* at 1202 (internal quotation marks and citation omitted).

## B.    Detention of Non-Citizens Under the INA

The INA provides a "complex statutory framework of detention authority," codified at 8 U.S.C. §§ 1226 and 1231. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). In this case, Petitioner is detained pursuant to § 1226(a). The Attorney General has discretionary authority under § 1226(a) to determine whether a non-citizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the non-citizen falls within one of the categories of criminals for whom detention is mandatory under § 1226(c). The Ninth Circuit has construed the "detention authority under § 1226(a) as limited to the 'period reasonably necessary to bring about [an] alien's removal from the United States'." *Prieto-Romero*, 534 F.3d at 1063 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001)). "The purpose behind detaining criminal aliens is to ensure their appearance at removal proceedings and to prevent them from engaging in further criminal activity." *Matter of Siniauskas*, 27 I & N Dec. 207, 208 (BIA 2018) (citing *Matter of Kotliar*, 24 I & N Dec. 124, 127 (BIA 2007)).

## C.    Bond Hearings

After ICE makes an initial custody determination, a § 1226(a) detainee may request a bond redetermination by an IJ. 8 C.F.R. § 236.1(d)(1). Once an IJ makes an initial bond decision, a detainee's subsequent request for a bond redetermination must show that his or her circumstances have changed materially since the prior bond redetermination. 8 C.F.R. § 1003.19(e). If detainees "are dissatisfied with the IJ's bond determination, they may file an administrative appeal so that

'the necessity of detention can be reviewed' " by the BIA. *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (quoting *Prieto-Romero*, 534 F.3d at 1059). If the BIA denies relief, detainees then "may file a petition for habeas corpus in the district court," and if the decision is unfavorable, "[t]hey may then appeal to" the Court of Appeals. *Id.* (citing *Singh*, 638 F.3d at 1200–03).

### 1.   Admissibility of Evidence

A § 1226(a) detainee is eligible for bond when "he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Siniauskas*, 27 I & N Dec. at 208 (citation omitted).   Because a non-citizen "in removal proceedings has no constitutional right to release on bond," a denial of bond is within an IJ's "lawful discretion as long as it has a 'reasonable foundation'." *Matter of Guerra*, 20 I & N Dec. 37, 39 (BIA 2006) (quoting *Carlson v. Landon*, 342 U.S. 524, 534 (1952)).

"Bond hearings provide a preliminary evaluation of the facts and evidence presented by the parties and are less formal than removal proceedings, where conclusive factual findings and legal determinations are made based on the testimony and evidence presented at a full hearing on the merits." *Matter of R-A-V-P-*, 27 I & N Dec. 803, 804 (BIA 2020) (citing *Matter of Chirinos*, 16 I & N Dec. 276, 277 (BIA 1977)).   "The Federal Rules of Evidence do not apply strictly in immigration removal proceedings." *Singh*, 638 F.3d at 1209–10 (noting that "bond hearings are particularly informal in nature") (citation omitted).   Rather, "DHS regulations delineating the rules of procedure for bond determinations" specify that an IJ "may rely 'upon *any information* that is available to the [IJ] or that is presented to him or her by the alien or the Service'." *Id.* at 1210 (quoting 8 C.F.R. § 1003.19(d) (emphasis added)).   The "primary consideration" for bond hearings is that "the parties be able to place the facts as promptly as possible before an impartial arbiter." *Chirinos*, 16 I & N Dec. at 277.   To achieve this objective, informal procedures are encouraged "so long as they do not result in prejudice." *Id.*[9]

---

[9] In merits hearings, the "sole test for admission of evidence is whether the evidence is probative and its admission is fundamentally fair." *Haile v. Holder*, 658 F.3d 1122, 1128 (9th Cir. 2011) (quotation omitted). "The inadmissibility of evidence that undermines fundamental fairness stems from the Fifth Amendment due process guarantee that operates in removal proceedings." *Hong v. Mukasey*, 518 F.3d 1030, 1035 (9th Cir. 2008).

To determine whether a detainee poses a risk of flight or danger to the community, an IJ considers multiple discretionary factors set forth in *Guerra*.[10] *Singh*, 638 F.3d at 1206. The IJ "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Guerra*, 20 I. & N. Dec. at 40. "Bond determinations depend heavily on the alien's circumstances and the specific facts of the case, and any 'probative and specific' evidence may be considered in assessing whether his release on bond is warranted, including unfavorable evidence of his conduct." *R-A-V-P-*, 27 I & N Dec. at 804 (citing *Guerra*, 24 I & N Dec. at 40–41).

"The *Guerra* factor most pertinent to assessing dangerousness" is the detainee's " 'criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses'." *Singh*, 638 F.3d at 1206 (quoting *Guerra*, 20 I. & N. Dec. at 40). The IJ may permissibly consider "not only the nature of a criminal offense but also the specific circumstances surrounding the alien's conduct," including "both arrests and convictions." *Siniauskas*, 27 I & N Dec. at 208. Even where a detainee has not been convicted of a criminal offense, "unfavorable evidence of his conduct, including evidence of criminal activity, is pertinent" to the IJ's analysis of dangerousness. *Guerra*, 20 I. & N. Dec. at 40–41 (IJ permissibly relied on pending criminal complaint as it was verified by a DEA agent and provided "specific and detailed" evidence of Guerra's direct involvement in a drug trafficking scheme) (citing *Matter of Thomas*, 21 I & N Dec. 20, 24 (BIA 1995) (holding that IJs may consider unfavorable conduct and "evidence of criminality" when determining whether discretionary relief from removal is warranted)).[11] The Ninth Circuit has provided additional guidance for assessing a criminal record:

---

[10] The "*Guerra* factors" include: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *Guerra*, 20 I. & N. Dec. at 40.

[11] In *Matter of Thomas*, Thomas claimed the IJ erroneously considered his convictions, which were pending on direct appeal, as evidence of unfavorable conduct in determining whether he merited voluntary removal as a matter of discretion. 21 I & N Dec. at 22. The BIA extensively cited cases wherein courts permissibly considered unfavorable criminal conduct, including where (1) a non-citizen pleaded guilty but a state law procedure or peculiarity prevented conviction, (2) a state court issued a judicial recommendation against deportation, thus, the conviction did not statutorily bar a finding of good moral character, (3) felony charges

"Although an alien's criminal record is surely relevant to a bond assessment, … criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness.  Rather, the recency and severity of the offenses must be considered."  *Singh*, 638 F.3d at 1206 (citing *Guerra*, 20 I. & N. Dec. at 40; *Casas-Castrillon*, 535 F.3d at 949).

An IJ has broad discretion to consider evidence relevant to dangerousness, including evidence of unfavorable conduct and alleged criminal activity, but "such evidence must be considered with an eye to its probativeness."  *Matter of A-B-L-*, AXXX XXX 554 (BIA Jan. 23, 2018) (citing *Guerra*, 24 I & N Dec. at 41).  In the absence of a conviction, an IJ must carefully scrutinize "evidence of criminality":

> When an alien's conduct results in his having had contact with the criminal justice system or being placed in criminal proceedings, the nature of those contacts and the stage to which those proceedings have progressed should be taken into account and weighed accordingly.  Hence, the probative value of and corresponding weight, if any, assigned to evidence of criminality will vary according to the facts and circumstances of each case and the nature and strength of the evidence presented.

*Thomas*, 21 I & N Dec. at 24; *A-B-L-*, AXXX XXX 554 ("As a rule," an IJ must assign " 'little weight' to conduct described in police documents when the conduct is neither prosecuted criminally nor independently corroborated") (citing *Matter of Arreguin*, 21 I & N Dec. 38, 42 (BIA 1995));[12] *cf. Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1004–05 (N.D. Cal. 2018) (mere fact

_____

were pending at the time of the non-citizen's deportation hearing, (4) a non-citizen's extensive criminal record included one expunged felony conviction, and (5) a non-citizen completed a pre-trial diversion program, thus, his narcotics charges were dismissed and did not result in conviction.  *Id.* at 23–24.  The BIA acknowledged that "evidence of criminality" must be considered in its proper context and then assigned "probative value" and "corresponding weight, if any."  *Id.* at 24–25.  Convictions resulting from guilty pleas or jury trials are "entitled to substantial weight."  *Id.* at 25.  Because Thomas pleaded guilty to one felony weapons charge, was convicted by jury trial on the others, including second-degree murder, and he admitted to criminal conduct during his merits hearing that resulted in discipline by prison officials, the BIA determined that his criminal proceedings had "advanced well beyond the point of arrest or the filing of a preliminary police report implicating him in criminal activity."  *Id.* at 25–26.  Accordingly, his "non-final convictions" and criminal conduct were admissible, "significant adverse factors" that did not outweigh his favorable equities.  *Id.*

[12] Numerous BIA decisions reviewing bond decisions emphasize the importance of an IJ considering the "probativeness" of alleged criminal activity and independent corroborating evidence, particularly where criminal charges are dismissed.  *E.g.*, *Matter of F-P-E-G-*, AXXX XXX 448 (BIA Feb. 24, 2020) (reversing IJ's finding of dangerousness where IJ relied on police report that was not corroborated by other evidence and disregarded supplemental case report stating case was closed based on the arrest of a different individual); *Matter of C-A-B-*, AXXX XXX 164 (BIA Feb. 5, 2020) (dismissing DHS appeal arguing that detainee was a danger to the community where federal criminal charges for drug trafficking were dismissed four days after his arrest and allegations of criminal associations were conclusory and unsupported by

of detainee's arrest and pending criminal charge was not "probative and specific;" thus, IJ's sole

reliance on such information to detain her violated due process).

### 2.   Burden of Proof – Due Process Considerations

Section 1226(a) is silent as to which party bears the burden of proof at a bond hearing and

the quantum of evidence necessary to satisfy that burden.[13]  Relying on Supreme Court precedent

addressing the constitutional safeguards required in other civil detention contexts, the Ninth Circuit

has determined that due process requires the government to show by clear and convincing evidence

that a § 1226(a) detainee presents a flight risk or danger to the community at the time of a bond

hearing in order to justify prolonged detention.  *Singh*, 638 F.3d at 1204 (noting that the Supreme

Court " 'repeatedly has recognized that civil commitment for any purpose constitutes a significant

deprivation of liberty' ") (quoting *Addington v. Texas*, 441 U.S. 418, 425, 427 (1979) (concluding

that an individual's interests are "of such weight and gravity that due process requires the state to

justify confinement by proof more substantial than a mere preponderance of the evidence").[14]

record evidence); *Matter of L-Y-V-A-*, AXXX XXX 531 (BIA Jan. 2, 2020) (reversing IJ's finding of dangerousness based on detainee's sole arrest for child endangerment and neglect where charges were dismissed); *Matter of C-C-C-*, AXXX XXX 219 (BIA Mar. 1, 2019) (dismissing DHS appeal arguing that detainee was a danger to the community where DUI arrest did not result in accident and strangulation charge was downgraded to simple assault); *Matter of G-D-*, AXXX XXX 055 (BIA July 24, 2018) (dismissing DHS appeal arguing that detainee was a danger to the community where he "admitted to an incident that lead to [criminal] charges," but those were the only criminal charges ever filed against him and were later dismissed); *Matter of A-D-J-*, AXXX XXX 192 (BIA Oct. 9, 2018) (dismissing DHS appeal arguing that detainee was a danger to the community where single arrest was his first encounter with law enforcement, domestic assault charge was dismissed, and he was instead convicted of disorderly conduct); *Matter of I-Y-*, AXXX XXX 129 (BIA Nov. 29, 2018) (denying DHS appeal asserting that detainee was a danger to the community based on two dismissed domestic assault charges and omissions relating to his military experience in his visa application); *A-B-L-*, AXXX XXX 554 (reversing IJ's finding of dangerousness based police seizure of large quantity of stolen retail merchandise at detainee's home; noting that he was not charged with any crime and little weight should be given to conduct described in police documents that is neither prosecuted criminally nor independently corroborated).

[13] Although the BIA acknowledges that § 1226(a) "does not specifically address the burden of proof" in bond hearings and simply affords "broad discretion" to the IJ detain, the BIA has "consistently held that aliens have the burden to establish eligibility for bond while proceedings are pending."  *Matter of Fatahi*, 26 I & N Dec. 791, 795 n.3 (BIA 2016) (collecting BIA cases).

[14] *See also Zadvydas*, 533 U.S. at 690 (finding that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause); *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (holding that "due process places a heightened burden of proof on the state in civil proceedings in which the individual interests at stake, are both particularly important and more substantial than mere loss of money' "); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020) (finding that *Jennings v. Rodriguez*, --- U.S. ----, 138 S. Ct. 830 (2018), did not disturb *Singh*'s holding "that *constitutional procedural due process* required the government to meet the clear and convincing

"Even where detention is permissible, … due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint'." *Casas-Castrillon*, 535 F.3d at 950 (quoting *Zadvydas*, 533 U.S. at 690).

In this case, the BIA applied the heightened standard in its 2018 BIA Decision (ECF No. 12-11), and Respondents do not challenge the clear-and-convincing standard of proof.

### 3. Standard of Review

" 'The clear and convincing evidence standard is a high burden and must be demonstrated in fact'." *Calderon-Rodriguez v. Wilcox*, 374 F. Supp. 3d 1024, 1033 (W.D. Wash. 2019) (quoting *Ramos v. Sessions*, 293 F. Supp. 3d 1021, 1030 (N.D. Cal. 2018)).  On habeas review, federal district courts do not evaluate "only whether the IJ announced the correct legal standard." *Ramos*, 293 F. Supp. 3d at 1030 (citing *Nat'l Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision."); *Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011) ("[W]here there is any indication that the BIA did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand. Such indications include misstating the record and failing to mention highly probative or potentially dispositive evidence.").[15]  Even where an IJ announced the correct standard, courts must consider "whether an IJ adequately applied the clear and convincing evidence standard to bond determinations." *Ramos*, 293 F. Supp. 3d at 1030–31 (collecting cases); *Lopez Reyes v. Bonnar*, 361 F. Supp. 3d 762, 773–74 (N.D. Cal. 2019) (IJ legally erred by failing to fully consider probative and significant evidence mitigating dangerousness).  Accordingly, this

burden of proof standard"); *Kashem v. Barr*, 941 F.3d 358, 380 (9th Cir. 2019) (acknowledging *Singh*'s clear-and-convincing evidence burden as a procedural due process standard "which applies in a range of civil proceedings involving substantial deprivations of liberty."); *Negrete Vargas v. Wolf*, Case No. 2:19-cv-2135-KJD-DJA, 2020 WL 1929842, Apr. 21 Order (ECF No. 22) (granting in part § 2241 petition based on due process violations and ordering a new bond hearing under the clear-and-convincing burden of proof).

[15] *Singh*, 638 F.3d at 1201–02 (expressly disagreeing with district court's conclusion that due process was satisfied simply because Singh "received an individualized bond hearing before a neutral IJ" and that was all Ninth Circuit precedent required); *Calderon-Rodriguez*, 374 F. Supp. 3d at 1035 (rejecting as "insufficient" the government's contention that "the court's only job is to ensure that the immigration courts recite the correct legal standard").

Court reviews "the IJ's factual findings for clear error, and independently reviews the facts, findings, and record to determine, *de novo*, whether those facts clearly and convincingly demonstrate that [a petitioner] poses such a danger to the community [or risk of flight] that [he or she] must remain detained, including because no alternative to detention could protect the community." *Calderon-Rodriguez*, 374 F. Supp. 3d at 1036 (quoting *Ramos*, 293 F. Supp. 3d at 1032–33 (analogizing to standard of review the Ninth Circuit applies when reviewing a district court's application of the clear-and-convincing evidence standard in criminal bail cases)).

## II.   PETITIONER HAS DEMONSTRATED DUE PROCESS VIOLATIONS

### A.   Evidence of Dangerousness

#### 1.   The Parties' Positions

Petitioner contends that her due process rights were violated because the IJ and BIA applied the wrong legal standards in her bond proceedings.  (ECF Nos. 1, 12.)  She argues the IJ's determination that she is a danger to the community erroneously relies on unsubstantiated and dropped charges of her closed criminal case as well as her purported presence during Cisneros' criminal acts.  She further asserts that her lone conviction for misdemeanor battery cannot support a finding that she is a danger to the community.  As such, the IJ's bond decisions were legally incorrect and constitutionally deficient.

In response, Respondents claim that Petitioner simply disagrees with the IJ's weighing of the evidence.  (ECF No. 19.)  They argue the IJ and BIA applied the clear-and-convincing burden on the government and correctly found that Petitioner poses a danger to the community based on the seriousness of her own offense and its circumstances.  They contend that Petitioner was not held accountable for Cisneros' crimes; rather, the IJ relied on Petitioner's sworn testimony during the bond hearing that she was convicted in relation to the same event as him and was initially charged with the same serious offenses for which he was convicted.  Respondents urge the Court to deny the Petition, arguing that Petitioner received a full and individualized bond hearing on her first bond request and DHS did all that was required.

In her reply, Petitioner points out she is not arguing that the IJ should have given less weight to her initial charges or to her husband's convictions—she argues that the IJ's consideration

of either prejudiced her by depriving her of a full and fair hearing under the correct legal standards. (ECF No. 20.)   Although an IJ generally may consider arrests and pending criminal charges, Petitioner asserts that the IJ erred in considering her initial criminal charges because all but one was dismissed and there is no evidence to support a finding that she committed any of the dropped charges.  She contends that the government proffered no evidence or testimony suggesting that she committed robbery, conspiracy to commit murder, attempted murder with use of a deadly weapon, or any of the other charges stated in the original indictment.  Because there is no record evidence indicating that she caused the events of November 2016, and Cisneros pleaded guilty to two felonies distinct from her single misdemeanor battery, Petitioner maintains that Respondents are necessarily holding her responsible for Cisneros' actions, which she describes as guilt by association.  Additionally, Petitioner claims she suffered prejudice because the only probative evidence of her dangerousness was the misdemeanor battery conviction, which is a not a crime of violence or moral turpitude under the INA and is "extremely minor" under Nevada law.

## 2.   Jurisdiction is Satisfied

As a threshold matter, the Court is not persuaded by Respondents' argument that the Petition seeks direct review of the IJ's discretionary weighing of evidence.  Petitioner alleges constitutional and legal error based on the IJ's failure to apply the correct legal standards, which resulted in the IJ's erroneous finding of dangerousness.  These allegations do not claim the IJ "simply came to an unwise, yet lawful, conclusion" when the IJ exercised discretion by denying bond.  *Gutierrez-Chavez v. INS*, 298 F.3d 824, 828 (9th Cir. 2002) ("Habeas is available to claim that [an IJ] somehow failed to exercise discretion in accordance with federal law or did so in an unconstitutional manner.").  Because Petitioner's allegations focus on constitutional and legal flaws in the bond hearing, her due process claim is cognizable on federal habeas review.  *See Singh*, 638 F.3d at 1202.

Having reviewed the record under the standards articulated herein, the Court finds that the record did not contain clear and convincing evidence to support the IJ's finding of dangerousness.  Thus, the 2018 IJ Decision violated Petitioner's due process rights.

///

14

### 3.    Petitioner's Dismissed Charges

Petitioner's dismissed criminal charges were not "probative and specific" evidence of her criminal activity. *See Guerra*, 24 I & N Dec. at 40–41.  The IJ was required to carefully scrutinize evidence of Petitioner's alleged criminality. *See Thomas*, 21 I & N Dec. at 24.  However, the 2018 IJ Decision demonstrates that IJ did not do so.  The IJ acknowledged that Petitioner's criminal case was favorably resolved prior to the bond hearing with one misdemeanor conviction for battery; however, the IJ still relied on her initial charges as support for the finding of dangerousness.  (ECF No. 12-10 ("Despite this conviction, [she] was originally charged with attempted murder, discharging a firearm at a structure or vehicle, robbery, battery to commit robbery, conspiracy to commit murder, and conspiracy to commit robbery.").)  Because all but one criminal charge was dismissed, the untested criminal allegations needed corroboration by other evidence along with a corresponding assessment of probative value and weight.  *See Thomas*, 21 I & N Dec. at 23–25 (citing *Sierra-Reyes v. INS*, 585 F.2d 762, 764 n.3 (5th Cir. 1978) (police reports implicating a non-citizen in criminal activity but never resulting in prosecution were not probative).  Here, the record contains no independent evidence to support Petitioner's involvement in the alleged criminal activity forming the basis of the dismissed charges.  Likewise, Respondents have not pointed to any record evidence to demonstrate the alleged criminality.  Because the dismissed charges were wholly uncorroborated, they were not probative of Petitioner's criminal activity and cannot constitute clear and convincing evidence of her dangerousness.

### 4.    Petitioner's Presence During Cisneros' Crimes

Even if Petitioner was "present when her husband attempted to murder somebody" (ECF No. 12-10), her mere presence was not probative of her danger to the community.[16]  Petitioner argues that her presence constitutes guilt-by-association evidence.  The Supreme Court has repeatedly denounced "governmental action imposing criminal sanctions or denying rights and privileges solely because of a citizen's association." *Healy v. James*, 408 U.S. 169, 185–86 (1972)

---

[16] Neither party submitted a transcript or audio recording of January 2018 bond hearing with their exhibits. However, the Court need not decide whether Petitioner's May 2018 testimony conflicted because, even if she was present for Cisneros' crimes, her mere presence was not probative of her dangerousness.

(collecting cases); *N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 932 (1982) (acknowledging "that guilt by association is a philosophy alien to the traditions of a free society and the First Amendment itself").  Guilt-by-association evidence generally lacks relevance, and even if it is relevant, such evidence should be excluded where its probative value is substantially outweighed by the danger of unfair prejudice.  *United States v. Polasek*, 162 F.3d 878, 885 n.2 (5th Cir. 1998) (citing Fed. R. Evid. 401, 402, 403).  The Ninth Circuit has echoed this principle many times in the context of criminal cases: "there can be no conviction for guilt by association." *United States v. Garcia*, 151 F.3d 1243, 1246 (9th Cir. 1998) (quotation omitted); *Amado v. Gonzalez*, 758 F.3d 1119, 1140 (9th Cir. 2014) ("Mere presence in a crowd is not sufficient to render a person an accomplice."); *United States v. Goldtooth*, 754 F.3d 763, 769 (9th Cir. 2014) ("Mere presence at the scene does not an aider and abettor make.").[17]

Here, Petitioner's purported presence during Cisneros' criminal acts added no probative value to the IJ's determination of her dangerousness.  Respondents claim the IJ did not hold Petitioner accountable for Cisneros' crimes, but simply exercised broad discretion to rely on Petitioner's testimony that "she was convicted in relation to the same event" as him, and was initially charged with the same serious offenses for which he was convicted.  (ECF No. 19 at 12–13.)  Their argument misses the mark.  Although bond proceedings are informal and the Federal Rules of Evidence do not strictly apply, the IJ's broad discretion in bond determinations was not unfettered.  The IJ was permitted to consider " 'probative and specific' evidence … including unfavorable evidence of [Petitioner's] conduct," *see Matter of R-A-V-P-*, 27 I & N Dec. at 804, so long as any "evidence of criminality" was supported by independent evidence, *see Thomas*, 21 I & N Dec. at 24.  It is undisputed that Petitioner's battery conviction resulted from the events of November 2016 and she was originally charged with the same crimes as Cisneros.  As explained, however, the dismissed charges were not probative of Petitioner's criminal activity because the

---

[17] This principle holds true even where a defendant is charged with conspiracy.  Ninth Circuit precedent firmly "establish[s] that presence at the location of a conspiracy's activities, while the activities are taking place, knowing that they are taking place, *without proof of intentional participation in the conspiracy*, cannot support a conspiracy conviction."  *United States v. Tran*, 568 F.3d 1156, 1165 (9th Cir. 2009) (quotation omitted, emphasis added).

1   record was devoid of supporting evidence.

2          More importantly, Respondents fail to explain how a locational or temporal relation

3   between Petitioner's misdemeanor battery and Cisneros' felony crimes increases the probability

4   that was she was involved in his criminal acts.  Respondents cite no case law substantiating their

5   position that the IJ's finding of dangerousness is supported by (1) Petitioner's misdemeanor battery

6   occurring at the same place or time as Cisneros' crimes, or (2) her presence during Cisneros'

7   crimes—without any evidence of her participation.  Only Petitioner's conduct is probative of her

8   dangerousness.   The government presented no evidence tending to show that Petitioner

9   participated in Cisneros' crimes in any manner.  The 2018 IJ Decision discusses no evidence from

10   which the IJ could infer Petitioner's involvement in Cisneros' crimes.

11          Petitioner claims she was not present when Cisneros committed crimes in November 2016,

12   *but even if she was*, the IJ's reliance on her presence was legal error in the absence of evidence

13   connecting her conduct to his criminal acts.  *See Tran*, 568 F.3d at 1165 ("It is not a crime to be

14   acquainted with criminals or to be physically present when they are committing crimes.")

15   (quotation omitted).  The IJ legally erred by relying on Petitioner's presence during Cisneros'

16   crimes to support a finding of dangerousness.

                            5.     Prejudice to Petitioner

18          Having identified constitutional and legal error, the Court next examines whether the error

19   was prejudicial.  *See Singh*, 638 F.3d at 1205.  Based on Petitioner's single arrest and conviction

20   for misdemeanor battery and the IJ's erroneous reliance on Petitioner's dismissed charges and

21   presence during Cisneros' criminal acts, the Court finds that such error caused her prejudice.

22          When stripped of the error identified in this order, the sole evidence of dangerousness

23   remaining in the 2018 IJ Decision is Petitioner's 2017 arrest and misdemeanor battery conviction.

24   However, a single arrest and conviction for misdemeanor battery is insufficient to support the

25   denial of bond as a matter of law.  Under NRS 200.481, criminal battery may be punished as a

26   misdemeanor, category B felony, or category C felony depending on the victim's status, whether

27   the battery was committed with a deadly weapon or by strangulation, and whether substantial

28   bodily harm resulted.  Potential imprisonment for category B or C felonies ranges from a minimum

of one year to a maximum of 20 years, and/or a fine of up to $10,000.  NRS 193.130.  A misdemeanor battery is one that is "not committed with a deadly weapon, and no substantial bodily harm to the victim results," NRS 200.481(2)(a),[18] and is punishable by detention in a county jail for no more than six months and/or a fine of up to $1,000.  NRS 193.150.

The 2018 IJ Decision states that Petitioner "was convicted of battery in May 2017."  (ECF No. 12-10.)  The IJ did not specify whether the conviction was a misdemeanor or felony or state the sentence imposed.  The 2018 BIA Decision describes Petitioner's conviction as the result of a "very serious crime."  (ECF No. 12-11.)  The 2019 BIA Decision states that "she was convicted of battery," noting that she "testified during her initial bond hearing that she slapped a man."  (ECF No. 12-15.)  Both the IJ and the BIA failed to recognize the misdemeanor nature of her battery conviction, or the short sentence of only 30 days with all fees and assessments waived.  (ECF No. 12-8 at 4.)

Contrary to the BIA's unsupported conclusion, the Court finds that misdemeanor battery is not a very serious crime under Nevada law, the INA, or federal case law.  Misdemeanor battery is not listed amongst the category of crimes imposing mandatory detention, including crimes of moral turpitude, aggravated felonies, controlled substance offenses, certain firearm offenses, espionage and sabotage crimes, or terrorist activities.  *See* 8 U.S.C. § 1226(c).  The statutory language of NRS 200.481(2)(a) confirms that Petitioner did not commit the offense with a deadly weapon, and no substantial bodily harm resulted.  Courts reviewing habeas petitions have held that petitioners' misdemeanor—and *more* serious—criminal history did not amount to clear and convincing evidence of dangerousness.  *E.g.*, *Calderon-Rodriguez*, 374 F. Supp. 3d at 1036 (two misdemeanor DUIs and one felony DUI/vehicular assault resulting in injury and damaged property); *Ortega-Rangel*, 313 F. Supp. 3d at 1004–05 (one arrest and pending criminal charge for possession of controlled substance with intent to sell); *Ramos*, 293 F. Supp. 3d at 1030–31 (two

---

[18] *See also Hobbs v. State*, 127 Nev. 234, 238, 251 P.3d 177, 179 (2011) (finding that the "force" required by NRS 200.481 to commit criminal battery "need not be violent or severe and need not cause bodily pain or bodily harm") (citing 2 Charles E. Torcia, *Wharton's Criminal Law* § 177, at 414–15 (15th ed. 1994) ("At common law, the contact need not result in physical harm or pain; it is enough that the contact be offensive.")).

misdemeanor DUIs and a hit-and-run).  Courts have also found due process violations where the IJ misinterpreted or failed to consider probative evidence of treatment, rehabilitation, or the amount of time passed since a conviction.  *See Singh*, 638 F.3d at 1205 (finding evidence of dangerousness "equivocal" where Singh's convictions for petty theft, receipt of stolen property, and substance abuse were years old and his drug use had ceased) *Lopez Reyes*, 361 F. Supp. 3d at 773–74 (petitioner's completion of rehab, despite convictions for felony assault and three misdemeanor DUIs ranging from one to nine years old, amounted to materially changed circumstances and legal error); *Mau v. Chertoff*, 562 F. Supp. 2d 1107, 1118 (S.D. Cal. 2008) (IJ failed to assess Mau's "present and future dangerousness" or appropriate release conditions where record included one felony DUI and two misdemeanor DUIs between four and six years earlier).

Given the misdemeanor nature of Petitioner's battery conviction and single arrest related to that conviction, it is reasonable to conclude that the IJ's bond determination could easily have been different if the IJ had not considered and relied upon non-probative evidence of her dangerousness to deny bond.  *See Singh*, 638 F.3d at 1205 (finding that application of an erroneous legal standard "could well have affected the outcome of the bond hearing" where the evidence of flight risk and dangerousness "was by no means overwhelming").  The short sentence of 30-days further supports this conclusion, particularly because she has been detained for far longer—over 31 months and counting—than the one-month punishment the state court imposed for the misdemeanor battery.  *See Mau*, 562 F. Supp. 2d at 1118.  As in *Singh*, the Court finds that Petitioner was prejudiced because it cannot "conclude that the clear and convincing evidence standard ... would not have affected the outcome of the bond hearing."  638 F.3d at 1205.

### B.    Remaining Contentions

In addition to the arguments addressed above, Petitioner contends that her due process rights were violated because (1) she was denied a *Casas* hearing, (2) the IJ erroneously denied her request for a new bond hearing based on changed circumstances under 8 C.F.R. § 1003.19(e), (3) the IJ improperly refused to let Petitioner or two other witnesses testify in support of her changed circumstances, (4) the IJ ignored applicable factors regarding Petitioner's risk of flight, and (5) her prolonged detention contravenes 8 U.S.C. § 1226(a) and 8 C.F.R. § 1003.6(a)(2)(i).

Because the Court finds that Petitioner is entitled to a new bond hearing under the appropriate legal standards, it need not consider Petitioner's remaining arguments.

### C.     The Appropriate Remedy

This decision identifies two due process violations with respect to Petitioner's bond proceedings. She succeeded in showing that the 2018 IJ Decision was legally incorrect and constitutionally deficient because the IJ erroneously relied on the dismissed charges of Petitioner's closed criminal case as well as her presence during Cisneros' criminal acts.

Turning to the question of remedy, the Court finds that a new bond hearing conducted in accordance with the legal standards articulated in this order, on an expedited basis, is the appropriate remedy. *E.g.*, *Lopez Reyes*, 362 F. Supp. 3d at 778; *Calderon-Rodriguez*, 374 F. Supp. 3d at 1037. The Court therefore grants Petitioner's Petition with respect to her request for an expedited, new bond hearing. If the government is unable to justify Petitioner's continued detention at the new bond hearing, she should be released on appropriate conditions.

### III.     PETITIONER'S REQUEST FOR ATTORNEY'S FEES AND COSTS

Petitioner requests an award of attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 and 28 U.S.C. § 2412. (ECF No. 1 at 17.) The EAJA authorizes an "award to a prevailing party ... [of] fees and other expenses ... incurred by that party in any civil action ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d). Within 30 days of this order, Petitioner may file a motion requesting and substantiating reasonable fees and costs under the EAJA, the Federal Rules of Civil Procedure, and the Local Rules of Practice.

**IT IS THEREFORE ORDERED:**

1.  Petitioner Maria M. Fuentes Reyes' Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED IN PART AND DENIED IN PART as explained in this order.

2.  **On or before May 15, 2020**, Respondents must provide Petitioner with a new bond hearing before an IJ. At that hearing, the government must prove, by clear and convincing evidence, that Petitioner is a current flight risk or danger to the community to justify continued detention. If the government is unable to carry its burden,

Petitioner should be released on appropriate conditions.

3.  Within 30 days of this order, Petitioner may file a motion requesting and substantiating reasonable fees and costs under the EAJA, the Federal Rules of Civil Procedure, and the Local Rules of Practice.

DATED:  May 8, 2020

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE