# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| MARIA MAGDALENA FUENTES REYES, | Case No. 2:19-cv-02086-GMN-EJY |
| Petitioner, | |
| v. | **ORDER** |
| ALEJANDRO MAYORKAS, Secretary of the U.S. Department of Homeland Security,[1] et al., | |
| Respondents. | |

Before the Court on Petitioner Maria M. Fuentes Reyes' Motion for Attorney Fees Under the Equal Access to Justice Act (ECF No. 22). Respondents have opposed the Motion, and Petitioner has replied. (ECF Nos. 22, 24.) For the reasons discussed below, Petitioner's motion is granted in part and denied in part.

## BACKGROUND[2]

Petitioner initiated this habeas corpus proceeding by filing a counseled Petition for Writ of Habeas Corpus (ECF No. 1) under 28 U.S.C. § 2241 to challenge her prolonged immigration detention. In May 2020, the Court granted in part the Petition, finding that the immigration judge's ("IJ") bond decision was legally incorrect and constitutionally deficient. (ECF No. 21.) The Court identified two due process violations with respect to Petitioner's immigration bond proceedings. In short, the record did not contain clear and convincing evidence to support the IJ's finding of dangerousness because the IJ erroneously relied on (i) dismissed charges in Petitioner's closed criminal case, and (ii) her purported presence during her husband's criminal acts. (*Id*. at 14–17.)

---

[1] Alejandro Mayorkas is now the Secretary of the U.S. Department of Homeland Security. Pursuant to the Federal Rules of Civil Procedure, the Court therefore substitutes Alejandro Mayorkas for Chad Wolf as the named respondent in this action. *See* Fed. R. Civ. P. 25(d) (allowing the automatic substitution of a successor to a public officer who is a party to an action but ceases to hold office while the action is pending).

[2] As the Court and the parties are familiar with the underlying facts of this case, this order only discusses what is relevant to the current motion. The May 8, 2020 Order (ECF No. 21) fully outlines the underlying facts and procedural history of this case.

The Court held that a new bond hearing conducted on an expedited basis under the correct legal standards was an appropriate remedy. (*Id*. at 20.) Petitioner was permitted to file a motion within 30 days pursuant to the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 and 28 U.S.C. § 2412, the Federal Rules of Civil Procedure, and the Local Rules of Practice, requesting and substantiating attorney's fees and costs. (*Id.*)

## DISCUSSION

Under 28 U.S.C. § 2412(d)(1)(A) of the EAJA:

> eligibility for a fee award in any civil action requires: (1) that the claimant be "a prevailing party"; (2) that the Government's position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement.

*Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1167 (9th Cir. 2019) (quoting *I.N.S. Comm'r v. Jean*, 496 U.S. 154, 158 (1990)), *cert. denied*, 140 S. Ct. 424 (2019).

"The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority." *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991). "Congress specifically intended the EAJA to deter unreasonable agency conduct." *Ibrahim*, 912 F.3d 1147, 1166–67 (9th Cir. 2019) (citing *Jean*, 496 U.S. at 163 n.11 (quoting the statement of purpose for the EAJA, Pub. L. No. 96-481, §§ 201–08, 94 Stat. 2321, 2325–30 (1980)). "The policy behind the EAJA 'is to encourage litigants to vindicate their rights where any level of the adjudicating agency has made some error in law or fact and has thereby forced the litigant to seek relief from a federal court'." *Id.* at 1167 (quoting *Li v. Keisler*, 505 F.3d 913, 919 (9th Cir. 2007)).

### A. Substantial Justification

Respondents only oppose Petitioner's eligibility for an EAJA fee award on one ground, arguing that the government's position was substantially justified. (*See* ECF No. 24 at 3–7.) But if the Court determines the government's position was not substantially justified, Respondents ask that Petitioner's requested fees be reduced.

The government bears the burden of showing that its position was substantially justified.

*Gonzalez v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005). To prove substantial justification, "the government need not establish that it was correct or 'justified to a high degree'." *Ibrahim*, 912 F.3d at 1167 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The government must only establish that "its position is one that 'a reasonable person could think it correct, that is, [that the position] has a reasonable basis in law and fact'." *Id.* (quoting *Pierce*, 487 U.S. at 566 n.2).

The fact that the government did not prevail in court "does not raise a presumption that its position was not substantially justified." *Kali v. Bowen*, 854 F.2d 329, 334 (9th Cir. 1988). "When evaluating the government's 'position' under the EAJA," federal courts "consider both the government's litigation position and the 'action or failure to act by the agency upon which the civil action is based'." *Ibrahim*, 912 F.3d at 1168 (quoting 28 U.S.C. § 2412(d)(1)(B)). "Thus, the substantial justification test is comprised of two inquiries, one directed toward the government agency's conduct, and the other toward the government's attorneys' conduct during litigation. *Id.* (citing *Gutierrez v. Barnhart*, 274 F.3d 1255, 1259 (9th Cir. 2001)).

The government's pre-litigation position was that Petitioner was a danger to the community based on (i) dismissed charges in her closed criminal case, and (ii) her purported presence during her husband's criminal acts. (ECF No. 21 at 3–6.) Petitioner contends that the agency action giving rise to this litigation was not substantially justified as it was factually unsupported and legally flawed, as the Court held in its decision granting in part the Petition. (ECF No. 22 at 9–11.) Although they did not prevail on the Petition, Respondents argue that government's position was nevertheless substantially justified:

> The Court's conclusion that dismissed charges must be otherwise corroborated for an Immigration Judge to rely on them in the context of making a bond determination is not well-settled, and the Court's disagreement with the Immigration Judge's reliance on petitioner's testimony that she was present for the offense and took part in some of the criminal incident does not render the government's position substantially unjustified.

(ECF No. 24 at 3–4.) To support their contention that the Court's conclusion is not well-settled, Respondents assert that the Court relied substantially on cases relating to removal proceedings such as *Matter of Thomas*, 21 I & N Dec. 20 (BIA 1995), rather than bond proceedings, which are

separate from removal proceedings and less formal.  (ECF No. 24 at 4).

The Court finds that the underlying agency action was not substantially justified based on the two due process violations the Court identified in its order granting in part the Petition.  (*See* ECF No. 21.)  With regard the dismissed charges, the Court found as follows:

> the record contains no independent evidence to support Petitioner's involvement in the alleged criminal activity forming the basis of the dismissed charges.  Likewise, Respondents have not pointed to any record evidence to demonstrate the alleged criminality.  Because the dismissed charges were wholly uncorroborated, they were not probative of Petitioner's criminal activity and cannot constitute clear and convincing evidence of her dangerousness.

(*Id.* at 15:14–19.)  This finding was not based on unsettled legal principles.  To the contrary, the order provided extensive citations to decisions by the Board of Immigration of Appeals ("BIA"), including those *reviewing bond decisions* and emphasizing the importance of an IJ considering the "probativeness" of alleged criminal activity and independent corroborating evidence, particularly where criminal charges are dismissed.  (*E.g.*, *id*. at 10–11 n.12.)  Those BIA decisions, in turn, cite to some of the same BIA opinions this Court relied on in its decision:[3] *Matter of Guerra*, 20 I & N Dec. 37 (BIA 2006); *Matter of Arreguin*, 21 I & N Dec. 38 (BIA 1995); *Matter of Thomas*, 21 I & N Dec. 20 (BIA 1995).  Although Respondents attempt to distinguish between cases reviewing removal proceedings, rather than informal bond proceedings, that argument is meritless.  When discussing evidentiary issues, it is not uncommon for BIA cases reviewing bond decisions to cite cases involving removal proceedings.  For example, the seminal BIA case establishing the "*Guerra* factors,"[4] *Matter of Guerra*—a case reviewing a bond decision—cites to *Matter of Thomas*—a case reviewing removal proceedings—for the principle that "unfavorable evidence of [a detainee's]

---

[3] The decision also cites to more recent BIA decisions reiterating established legal principles.  *E.g.*, *Matter of R-A-V-P-*, 27 I & N Dec. 803, 804 (BIA 2020); *Matter of Siniauskas*, 27 I & N Dec. 207, 208 (BIA 2018).

[4] The "*Guerra* factors," which an IJ considers to determine whether a detainee poses a flight risk or danger to the community, include: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *Guerra*, 20 I. & N. Dec. at 40.

conduct, including evidence of criminal activity, is pertinent" to the IJ's analysis of dangerousness. *Guerra*, 20 I & N Dec. at 40–41 (citing *Thomas*, 21 I & N Dec. at 24).  The Court's holding regarding Petitioner's dismissed charges followed well-settled legal principles.

As to Petitioner's purported presence during her husband's criminal acts, the Court held that mere presence was not probative of danger to the community and IJ legally erred by relying on Petitioner's presence to support a finding of dangerousness. (ECF No. 21 at 15–17.)

> Respondents fail to explain how a locational or temporal relation between Petitioner's misdemeanor battery and Cisneros' felony crimes increases the probability that was she was involved in his criminal acts.  Respondents cite no case law substantiating their position that the IJ's finding of dangerousness is supported by (1) Petitioner's misdemeanor battery occurring at the same place or time as Cisneros' crimes, or (2) her presence during Cisneros' crimes—without any evidence of her participation.  Only Petitioner's conduct is probative of her dangerousness.  The government presented no evidence tending to show that Petitioner participated in Cisneros' crimes in any manner.  The 2018 IJ Decision discusses no evidence from which the IJ could infer Petitioner's involvement in Cisneros' crimes.
>
> Petitioner claims she was not present when Cisneros committed crimes in November 2016, *but even if she was*, the IJ's reliance on her presence was legal error in the absence of evidence connecting her conduct to his criminal acts.

(*Id*. at 17:2–13 (emphasis in original).)

Respondents argue that the "government did not have the benefit of the Court's reasoning when it concluded that charges dismissed as the result of a plea deal" along with Petitioner's testimony that she "took part in the incident for which her husband was convicted" was not sufficiently probative of her criminality.  (ECF No. 24 at 4.)  They characterize this as a "disagreement as to the probative value of the evidence of criminality" and claim it "does not render the government's position unjustified." (*Id.*)  Petitioner asserts this is the same, meritless guilty-by-association argument that the Court rejected in its decision. (ECF No. 25 at 3–4.)

The Court's decision rejected as a threshold matter Respondents' argument that the Petition simply disagreed with the IJ's discretionary weighing of evidence. (ECF No. 21 at 14.)  The decisions states that Petitioner's allegations focused on constitutional and legal flaws in the bond hearing; thus, jurisdiction was satisfied and her due process claims were cognizable on federal habeas review. (*Id.*)  The Court did not simply disagree with the IJ about the probative value of the evidence of criminality—if it had merely disagreed, jurisdiction would have been lacking and

her due process claims would not have been cognizable. *See Gutierrez-Chavez v. I.N.S.*, 298 F.3d 824, 828 (9th Cir. 2002) (noting that habeas review is not available for claims that an IJ "simply came to an unwise, yet lawful, conclusion" when exercising discretion by denying bond, instead, a petitioner must allege the IJ "somehow failed to exercise discretion in accordance with federal law or did so in an unconstitutional manner").

Similar to its finding regarding dismissed criminal charges, the Court's discussion of the legal standards applicable to Petitioner's alleged presence during her husband's crimes did not break new legal ground. Instead, as the decision points out, the United States Supreme Court and Ninth Circuit have repeatedly denounced "governmental action imposing criminal sanctions or denying rights and privileges solely because of a citizen's association." *Healy v. James*, 408 U.S. 169, 185–86 (1972); *United States v. Tran*, 568 F.3d 1156, 1165 (9th Cir. 2009) ("It is not a crime to be acquainted with criminals or to be physically present when they are committing crimes.") (quotation omitted).[5] Upon reviewing the record under the correct legal standards, the Court determined that the Petitioner's due process rights were violated as "the record did not contain clear and convincing evidence to support the IJ's finding of dangerousness." (ECF No. 21 at 14.) There was no evidence about which the parties could disagree.

For these reasons, and those further explained in the May 2020 decision, the Court finds that the government's position, as a whole, was not substantially justified as it lacked a reasonable basis in either law or fact. *See Ibrahim*, 912 F.3d at 1168; *Bundorf v. Jewell*, 336 F. Supp. 3d 1248, 1253 (D. Nev. 2018) ("If the underlying agency action was not substantially justified, the court need not consider whether the government's litigation position was substantially justified.") (quotation omitted).

---

[5] *See also N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 932 (1982) (acknowledging "that guilt by association is a philosophy alien to the traditions of a free society and the First Amendment itself"); *United States v. Goldtooth*, 754 F.3d 763, 769 (9th Cir. 2014) ("Mere presence at the scene does not an aider and abettor make."); *United States v. Garcia*, 151 F.3d 1243, 1246 (9th Cir. 1998) ("there can be no conviction for guilt by association") (quotation omitted); *United States v. Polasek*, 162 F.3d 878, 885 n.2 (5th Cir. 1998) (citing Fed. R. Evid. 401, 402, 403) (guilt-by-association evidence generally lacks relevance, and even if it is relevant, such evidence should be excluded where its probative value is substantially outweighed by the danger of unfair prejudice).

### B.     Reasonable Attorney's Fee

#### 1.     Reasonable Hourly Rates

Under the EAJA, courts "must determine the hourly rate 'according to the prevailing market rates in the relevant community'." *Bundorf*, 336 F. Supp. 3d at 1253 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  The EAJA imposes a statutory cap of $125 per hour, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii).  The Ninth Circuit has set the maximum hourly rate, adjusted to reflect increases in the cost of living, for the years 2015 through 2020 at various rates between $190.28 and $207.78.[6]

Petitioner seeks an hourly rate of $205.25 for the three attorneys who participated in her case. (ECF No. 22-3 at 4.)  Respondents do not oppose the hourly rate. (ECF No. 24 at 5–7.)  The Court accepts Petitioner's proposed rates.

#### 2.     Reasonable Expended Hours

Respondents argue that the Court should decrease Petitioner's fee award because it includes clerical work, the fees are inflated, and the documentation submitted is unreliable. (ECF No. 24 at 5.) Petitioner contends that Respondents' arguments are wholly arbitrary and lacking legal authority as the requested fees are neither excessive nor inflated. (ECF No. 25 at 5–7.)

First, Respondents contend that the request for $300 (6 hours billed at $50 per hour) is unreasonable because it is based on a "paralegal rate" for clerical work.  Petitioner argues it is not unusual for paralegals to perform "administrative tasks," such as compiling and arranging exhibits for court filings, and the requested $50 rate is reasonable and relatively low.  "[A] prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates." *Richlin Security Service Co. v. Chertoff*, 553 U.S. 571, 590 (2008). However, time spent by a paralegal on clerical matters is part of a law firm's overhead and is not

---

[6] *See* Statutory Maximum Rates Under the Equal Access to Justice Act, https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (last visited Mar. 22, 2021); *see also Thangaraja v. Gonzales*, 428 F.3d 870, 876–77 (9th Cir. 2005).

recoverable under the EAJA. *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). The Ninth Circuit has held that tasks such as filing, organizing documents, and maintaining a case file are clerical in nature. *Id.* Here, each instance of billed paralegal time involves clerical (*i.e.*, administrative) tasks, including compiling exhibits, file maintenance, and filing court documents. Such tasks must be excluded from an EAJA fee award.

Second, Respondents argue that the accounting Petitioner submitted is unreliable because one billing entry indicates that lead counsel "Finalize[d] Response to Motion to Dismiss," but no motion to dismiss was filed in this case. (ECF No. 22-3 at 3.) Thus, they urge the Court to reduce the fee request by 20 percent. Petitioner's counsel agrees that the billing entry identifies a mistake but maintains that the mistake is merely a labeling error and the work was actually performed with respect to Petitioner's Reply (ECF No. 20) in support of the Petition. The Court finds that the filing date of the Reply—January 30, 2020—aligns with the date listed on the mistaken billing entry, and counsel's prior billing entry on January 27, 2020, correctly identified the filing: "Initial Draft of *Reply to Answer*." (ECF No. 22-3 at 3 (emphasis added).) Although Respondents point out a minor discrepancy in the billing record, the docket and counsel's clarification provide a simple explanation. The billing record is reliable; thus, the requested reduction is denied.

Lastly, Respondents assert that the Petitioner's fee request appears inflated, and the hours expended were excessive. They argue that lead counsel's 28.71 hours should be reduced by 14 hours. A review of Petitioner's attorneys' time entries, the briefing in this case, the administrative record, and the Court's docket shows that the counsel reasonably expended the requested hours, including the brief preparation hours, in light of the results achieved in this case; thus, the requested hours are awarded. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008) ("[The] court's inquiry must be limited to determining whether the fees requested by this particular legal team are justified for the particular work performed and the results achieved in this particular case.").

///

///

///

**IT IS THEREFORE ORDERED:**

1. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Clerk of Court will SUBSTITUTE Alejandro Mayorkas for Chad Wolf as the named respondent in this action and update the docket accordingly.

2. Petitioner Maria Fuentes Reyes' Motion for Attorney Fees (ECF No. 22) is GRANTED IN PART AND DENIED IN PART.

3. Pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), attorneys' fees in the amount of $8,150.48 are awarded in favor of Petitioner Maria Fuentes Reyes.

4. The Clerk of Court is directed to ENTER FINAL JUDGMENT accordingly and close this case.

DATED: March 22, 2021

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE